UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

**ERIC PLATA,**

   *Plaintiff*,

v.                                                            Case No.  SA-23-CV-00235-JKP

**THE CITY OF SAN ANTONIO,
ACTING BY AND THROUGH ITS
AGENT, CITY PUBLIC SERVICE
BOARD,**

   *Defendant*.

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant City of San Antonio's Motion for Summary Judgment. *See* ECF No. 24. Plaintiff Eric Plata, who appears *pro se*, filed a response. *See* ECF No. 26. After due consideration of the parties' briefings, the record evidence, and the applicable law, the Court finds Plata has failed to meet his burden under the *McDonnell Douglas* framework to make a prima facie case for discrimination or retaliation and summary judgment is appropriate as a matter of law. The Court, therefore, **GRANTS** the City's Motion for Summary Judgment and **DISMISSES** this case. Final Judgment will be entered by separate order.

## BACKGROUND

Plaintiff Eric Plata, who appears *pro se*, brings this Title VII employment discrimination and retaliation lawsuit against his former employer, Defendant City of San Antonio. Plata, a Hispanic male, was a full-time journeyman at CPS Energy, an agency of the City of San Antonio, where he worked from 2002 until his termination on January 24, 2020. During his employment with CPS Energy, Plata was an IBEW member and complained once in December

2018 about assignment of an overtime project, though he did not mention national origin discrimination in his complaint.

In November 2019, CPS Energy received reports about improper behavior by two CPS Energy employees at its Grills Giving barbeque cook-off charitable event. Plata, who served as a member of one of the barbeque cook-off teams called the Solid Fuelers, is suspected to be one of the two individuals accused of wrongdoing. Plata's team, like many of the other teams, stayed at the park overnight to cook entries for the competition the following day. In the days after the 2019 Grills Giving event, CPS Energy received complaints from a CPS Energy contractor who reported that, on the afternoon of November 22, 2019, two individuals wearing CPS Energy employee shirts were driving around the park in a golf cart reserved for security contractors, acting in a belligerent manner. According to the report, the belligerent actions of these apparent CPS Energy employees continued until one of them actually punched a contractor, after which both CPS Energy employees immediately left the scene. The contractor later described one of these CPS Energy employees as having a tear drop tattoo under his eye. Another CPS Energy employee also reported to his supervisor that he had been threatened by someone he believed to be a CPS Energy employee during the Grills Giving event. As the reporting employee explained, the apparent CPS Energy employee kept honking his car horn, causing the reporting employee to joke to others around him that they should cut the wires to the horn. After making that joke, the reporting employee heard someone behind him say, "Do you really want to do that?" The reporting employee then turned around and saw someone holding a silver/chrome handgun outside of a black truck. The reporting employee told the individual to put the gun away because they did not need any problems. The individual put the gun back in the black truck and walked away. The reporting employee described the individual in question as being Hispanic, about 5'7"

tall, around 39-42 years of age, and with a tattoo on his cheekbone. CPS Energy's subsequent investigation into the reported concerns identified Plata and another employee as the suspected perpetrators.

Based on the reports received, CPS Energy promptly began an internal investigation. According to witnesses interviewed, the two CPS Energy employees driving a golf cart taken from the security area and involved in the altercation with the contractor were Plata, who fit the description of a Hispanic male with a small tattoo under his eye, and another member of the Solid Fuelers cook-off team, Christopher Richmond, an African American male. Both Plata and Richmond were placed on a paid administrative leave until the investigation was completed and decisions could be made regarding disciplinary action to be taken. As part of the investigation, both Plata and Richmond were interviewed, with Plata's interview taking place first. During Plata's initial interview, he denied taking the security golf cart and driving it around or having any guns in his personal truck at the event. He also was evasive in answering many of the questions asked. He did admit, however, that: (1) he owns a black pickup truck; (2) the horn on his truck went off several times at the event; and (3) he owns several guns, including a silver/chrome .357. Richmond was interviewed next, and he contradicted Plata. Richmond readily admitted he and Plata had taken the golf cart. Richmond, however, also admitted that, after Plata left to return the golf cart to the security area, Richmond became involved in a physical altercation with a contractor. Based on Richmond's admissions, Plata was interviewed a second time. Only upon being told about Richmond's admission did Plata finally concede he and Richmond had taken the security golf cart. Despite initially denying there was a fight, he now admitted he knew about it. During this second interview, Plata kept texting on his personal phone and had to be asked repeatedly to put his phone down and stop. In compliance with CPS

Energy's policies, all witnesses interviewed, including Plata, were advised the investigation was to be kept confidential while ongoing. Despite receiving this instruction twice due to his two separate interviews, Plata, immediately after leaving his second interview, stopped in the building reception area and began discussing the investigation with the receptionist and another individual present. One of the CPS Energy investigators overheard part of Plata's conversation, and the security camera in the reception area also captured the discussion and showed Plata violating the confidentiality instruction he had been twice given.

At the conclusion of the investigation, the investigation team consisting of Senior Human Resources ("HR") Generalist Andrea Renard (a white female) and HR Generalists Frances Flores (a Hispanic female) and Elena Tijerina (a Hispanic female), concluded that Plata had: (1) admitted to taking the security golf cart without permission; (2) failed to cooperate in the investigation by not immediately acknowledging he took the golf cart and acting evasive during his two interviews; and (3) failed to maintain the confidentiality of the investigation by talking about it with others in the workplace, despite being advised twice not to do so. These three actions were determined to violate CPS Energy's Ethics Policy, Civil Behavior Policy, and Corrective Action Policy and warranted recommending his termination from employment. After reviewing the investigation's findings and termination recommendation sent by Renard as the senior member of the investigation team, Deborah Wainscott (then-Senior Director of People Services), James Richardson (Director of Plant, Power Generation), and Veronica Wycoff (Senior Manager of Employee Relations) made the decision to terminate Plata. Although Plata fit the description of the employee involved in the Grills Giving incident, the investigation team did not conclude there was enough evidence to confirm the employee was in fact Plata. As a result,

this issue was not cited as a factor in Plata's discharge. Plata alleges his termination was the result of unlawful discrimination and retaliation based on his national origin.

The City of San Antonio argues the Court should dismiss Plata's case on summary judgment for four reasons. First, according to the City, Plata cannot establish a prima facie case of national origin discrimination because he cannot show he was replaced by someone outside of his protected class or similarly situated employees were treated better than him under nearly identical circumstances. Second, the City says Plata cannot show the reasons given for his termination of employment—taking a golf cart without permission at a charitable event, lying initially about not taking the golf cart and evading questions during a subsequent investigation, and failing to maintain confidentiality during that investigation—were pretext for national origin discrimination. Third, Plata cannot establish a prima facie case of retaliation because he cannot show he engaged in any protected activity, any decision maker was aware of his engagement in any protected activity, or there was any close timing between his alleged protected activity and termination of employment. Fourth, Plata cannot carry his ultimate burden of showing, but for his alleged protected activity, CPS Energy would not have terminated him. For the reasons discussed herein, the Court agrees and dismisses this case on summary judgment.

## LEGAL STANDARD

Summary judgment is appropriate if the record shows "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also Rodriguez v. Pacificare, Inc.*, 980 F.2d 1014, 1019 (5th Cir. 1993).[1] "A fact is material only if its resolution would affect the outcome of the action." *Wiley v. State Farm Fire & Cas. Co.*, 585 F.3d 206, 210 (5th Cir. 2009).

---

[1] Although 2010 amendments replaced "issue" with "dispute," the summary judgment standard "remains unchanged." Fed. R. Civ. P. 56 advisory committee notes (2010 amend.).

5

A genuine dispute for trial exists if the record taken as a whole could lead a reasonable trier of fact to find for the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986); *Bayle v. Allstate Ins. Co.*, 615 F.3d 350, 355 (5th Cir. 2010). Because there must be a genuine dispute of material fact, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson v. Liberty Lobby*, *Inc.*, 477 U.S. 242, 247–48 (1986).

The moving party bears the initial burden of informing the court of the basis for the motion and of identifying those portions of the record which demonstrate the absence of a genuine dispute of material fact or the appropriateness of judgment as a matter of law. *Celotex Corp.,* 477 U.S. at 323; *Adams v. Travelers Indem. Co.*, 465 F.3d 156, 163 (5th Cir. 2006). The movant is not required to negate the elements of the nonmovant's case but may satisfy its summary judgment burden by demonstrating the absence of facts supporting specific elements of the nonmovant's cause(s) of action. *Little v. Liquid Air Corp.*, 37 F. 3d 1069, 1075, 1076 n.16 (5th Cir. 1994).

To satisfy this burden, the moving party must provide affidavits or identify any portion of the pleadings, discovery or admissions that demonstrate the absence of a triable dispute of material fact. *Celotex Corp.*, 477 U.S. at 323; *Rodriguez,* 980 F.2d at 1019. "If the moving party fails to meet this initial burden, the motion must be denied, regardless of the nonmovant's response." *Pioneer Expl., L.L.C. v. Steadfast Ins. Co.*, 767 F.3d 503, 511 (5th Cir. 2014).

If the movant carries its initial burden, the burden shifts to the nonmovant to present competent summary judgment evidence showing the existence of a genuine dispute of material fact. *Matsushita*, 475 U.S. at 586–87; *see also* Fed. R. Civ. P. 56(c). Upon the shifting burden, "[u]nsubstantiated assertions, improbable inferences, and unsupported speculation are not

sufficient to defeat a motion for summary judgment." *Brown v. City of Houston, Tex.*, 337 F.3d 539, 541 (5th Cir. 2003); *see also Eason v. Thaler,* 73 F.3d 1322, 1325 (5th Cir. 1996). The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which this evidence raises a genuine dispute of material fact. *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998) (citing *Forsyth v. Barr,* 19 F.3d 1527, 1537 (5th Cir. 1994)). Further, should the nonmoving party fail "to address or respond to a fact raised by the moving party and supported by evidence, the court may consider the fact as undisputed" and "[s]uch undisputed facts may form the basis for a summary judgment." *Broadcast Music*, *Inc. v. Bentley*, SA-16-CV-394, 2017 WL 782932, at *2 (W.D. Tex. Feb. 28, 2017).

In determining the merits of a motion for summary judgment, a court has no duty to search the record for material fact issues or to find a party's ill-cited evidence. *Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 651 (5th Cir. 2012); *Ragas*, 136 F.3d at 458. In addition, a court may not make credibility determinations or weigh the evidence and must view all evidence and draw all reasonable inferences in the light most favorable to the party opposing the motion. *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 150 (2000); *Boudreaux v. Swift Transp. Co.*, *Inc.*, 402 F.3d 536, 540 (5th Cir. 2005).

## ANALYSIS

Plata brings claims of unlawful discrimination and retaliation based on national origin. Title VII makes it unlawful for covered employers to discriminate against individuals with respect to their "terms, conditions, or privileges of employment, because of [their] race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). "[A]n unlawful employment practice is established when the complaining party demonstrates that race, color, religion, sex, or

7

national origin was a motivating factor for any employment practice, even though other factors also motivated the practice." *Id*. § 2000e-2(m). Title VII also prohibits employers from retaliating against an employee for (1) opposing any employment practice made unlawful by its provisions and (2) making a charge, testifying, assisting, or participating in "in any manner in an investigation, proceeding, or hearing" under its provisions. *Id*. § 2000e-3(a). Courts assess Title VII retaliation claims by applying "traditional principles of but-for causation," which require proof "the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013).

Plaintiffs may prove Title VII claims of "intentional discrimination or retaliation either by direct or circumstantial evidence." *McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir. 2007); *accord Stroy v. Gibson ex rel. Dep't of Veterans Affairs*, 896 F.3d 693, 698 (5th Cir. 2018). When analyzing Title VII claims of disparate or discriminatory treatment, courts utilize the burden-shifting framework set out in *McDonnell Douglas Corporation v. Green*, 411 U.S. 792 (1973) unless there is direct evidence of discrimination. *See Stroy*, 896 F.3d at 698. That same "framework applies to Title VII retaliation claims brought under a pretext theory." *Septimus v. Univ. of Houston*, 399 F.3d 601, 608 (5th Cir. 2005); *accord Porter v. Houma Terrebonne Hous. Auth. Bd. of Comm'rs*, 810 F.3d 940, 948 (5th Cir. 2015). Not only does this framework apply at trial, *see McDonnell*, 411 U.S. at 802, but it also applies on summary judgment, *see Vaughn v. Woodforest Bank*, 665 F.3d 632, 635–36 (5th Cir. 2011).

"Direct evidence of discrimination is evidence which, if believed, would prove the existence of a fact (i.e., unlawful discrimination) without any inferences or presumptions." *Palacios v. City of Crystal City*, 634 F. App'x 399, 402 (5th Cir. 2015) (per

8

curiam) (quoting *Bodenheimer v. PPG Indus., Inc.*, 5 F.3d 955, 958 (5th Cir. 1993)). "If an inference is required for the evidence to be probative … the evidence is circumstantial, not direct." *Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 897–98 (5th Cir. 2002).

Under the *McDonnell Douglas* framework, plaintiffs must first establish "by the preponderance of the evidence a prima facie case of discrimination," *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252–53 (1981), or retaliation, *McCoy*, 492 F.3d at 556–57. Carrying this initial burden creates an inference or presumption of discrimination, *see Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 142 (2000); *Furnco Constr. Corp. v. Waters*, 438 U.S. 567, 577 (1978), or retaliation, *see Alkhawaldeh v. Dow Chem. Co.*, 851 F.3d 422, 427 (5th Cir. 2017). "The burden of establishing a prima facie case of disparate treatment is not onerous." *Burdine*, 450 U.S. at 253; *accord Turner v. Kan. City S. Ry. Co.*, 675 F.3d 887, 892 (5th Cir. 2012) (quoting *Burdine*). Nor is it onerous in the retaliation context. *See Manning v. Chevron Chem. Co.*, LLC, 332 F.3d 874, 883 n.6 (5th Cir. 2003); *Arismendiz v. Univ. of Tex. at El Paso*, 536 F. Supp. 2d 710, 716 (W.D. Tex. 2008). The prima facie case is flexible and necessarily varies in Title VII cases depending on the particular circumstances. *Burdine*, 450 U.S. at 253 n.6.

In general, to establish a prima facie case of discrimination, the plaintiff must show (1) membership in a protected group; (2) they are "qualified for the position at issue"; (3) an "adverse employment action by the employer"; and (4) being replaced by someone outside the protected group or being "treated less favorably than other similarly situated employees outside the protected group." *McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir. 2007). "In work rule violation cases, a Title VII plaintiff may establish a prima facie case by showing either (1)

9

that she did not violate the rule or (2) that if she did, other employees who engaged in similar acts were not punished similarly." *Turner*, 675 F.3d at 892–93.

The prima facie case in the retaliation context requires the plaintiff to establish: (1) participation "in an activity protected by Title VII"; (2) "an adverse employment action" by the employer; and (3) "a causal connection exists between the protected activity and the adverse employment action." *McCoy*, 492 F.3d at 556–57; *accord Wheat v. Fla. Par. Juvenile Justice Comm'n*, 811 F.3d 702, 705 (5th Cir. 2016). The third element requires only that the plaintiff "demonstrate a 'causal connection' between [the] protected activity and [the adverse action], even if [the plaintiff] must ultimately demonstrate but-for causation at the pretext stage of the *McDonnell Douglas* framework." *Garcia v. Prof'l Contract Servs., Inc.*, 938 F.3d 236, 241 (5th Cir. 2019); *accord Brown v. Wal-Mart Stores E., L.P.*, 969 F.3d 571, 577 (5th Cir. 2020), *as revised* (Aug. 14, 2020); *but see*, *Harville v. City of Houston, Miss.*, 945 F.3d 870, 879 (5th Cir. 2019) (identifying "a but-for causal connection" in the prima facie case).

Once the plaintiff establishes the prima facie case, "the burden then shifts to the employer to articulate a legitimate, nondiscriminatory or nonretaliatory reason for its employment action." *McCoy*, 492 F.3d at 557; *accord Wheat*, 811 F.3d at 710. This "burden is only one of production, not persuasion, and involves no credibility assessment." *McCoy*, 492 F.3d at 557; *accord Burdine*, 450 U. S. at 254–55; *Musser v. Paul Quinn Coll.*, 944 F.3d 557, 561 (5th Cir. 2019), *as revised* (Dec. 10, 2019) and *as revised* (Dec. 23, 2019) (citing *Reeves*, 530 U.S. at 142). If the employer satisfies its burden, "the plaintiff then bears the ultimate burden of proving that the employer's proffered reason is not true but instead is a pretext for the real discriminatory or retaliatory purpose." *McCoy*, 492 F.3d at 557. Plaintiffs have two alternatives to refute the employer's articulated reason by offering evidence sufficient to create a genuine dispute of

material fact. *Rachid v. Jack in the Box*, 376 F.3d 305, 312 (5th Cir. 2004). Through the mixed-motives alternative, they must show "that the defendant's reason, while true, is only one of the reasons for its conduct, and another motivating factor is the plaintiff's protected characteristic." *Id*. Through the pretext alternative, they must show "that the defendant's reason is not true, but is instead a pretext for discrimination." *Id*. Under this latter alternative, they must "prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." *Burdine*, 450 U.S. at 253.

With respect to the claims of disparate treatment and retaliation in this case, Plata presents no direct evidence of discrimination or retaliation. Accordingly, the *McDonnell Douglas* framework applies and Plata bears the burden of establishing, by a preponderance of the evidence, a prima facie case of discrimination and retaliation. *Burdine*, 450 U.S. at 252–53; *McCoy*, 492 F.3d at 556–57. According to the City of San Antonio, Plata cannot establish a prima facie case of discrimination because he has no evidence he was replaced by someone outside of his protected class or that similarly situated employees were treated better than him under nearly identical circumstances. Furthermore, the City argues even if Plata did establish a prima facie case, Plata cannot show the reasons given for his termination of employment were pretextual. The City finally argues Plata's retaliation claim fails because: (1) he cannot show he engaged in any protected activity, (2) any decision maker was aware of his engagement in any protected activity, or (3) there was any close timing between his alleged protected activity and termination of employment—(4) nor can he carry his ultimate burden of showing, but for his alleged protected activity, CPS Energy would not have terminated him.

Plata, who appears *pro se*, filed a response to the City's motion at the Court's urging; however, his response fails to address any of the City's arguments for dismissal on summary judgment. *See* ECF No. 26. The Court affords leniency to parties who appear *pro se*; however, Plata's *pro se* status does not excuse him from knowing and following the Court's requirements. *See Thrasher v. City of Amarillo*, 709 F.3d 509, 512 (5th Cir. 2013); *Saahir v. Collins*, 956 F.2d 115, 118–19 (5th Cir. 1992). Where, as here, the nonmoving party fails "to address or respond to a fact raised by the moving party and supported by evidence, the court may consider the fact as undisputed" and "[s]uch undisputed facts may form the basis for a summary judgment." *Broadcast Music*, *Inc.*, 2017 WL 782932 at *2.

The Court finds the record evidence supports the City's assertion that Plata cannot establish a prima facie case of discrimination or retaliation. Because Plata has failed to address the City's assertion that he cannot establish a prima facie case, and the evidence supports that assertion, the Court treats the City's assertion as an undisputed fact properly forming the basis for the Court's summary judgment ruling. The Court, therefore, finds Plata cannot establish a prima facie case for discrimination or retaliation and his claims fail as a matter of law.

## CONCLUSION

For the reasons discussed, the Court finds Plata has failed to meet his burden under the *McDonnell Douglas* framework to make a prima facie case for discrimination or retaliation and summary judgment is appropriate as a matter of law. The Court, therefore, **GRANTS** the City's Motion for Summary Judgment (ECF No. 24) and **DISMISSES** this case. Final Judgment will be entered by separate order.

It is so ORDERED.
SIGNED this 4th day of June, 2024.

_____
JASON PULLIAM
UNITED STATES DISTRICT JUDGE